**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

JOCELYN C. ROUTE

 *Plaintiff*,

 *v.*

ROBERT F. KENNEDY, JR.,
Secretary, U.S. Department of Health
and Human Services,

 *Defendant*.

Civil Action No. ELH-24-3732

**MEMORANDUM OPINION**

Jocelyn C. Route, plaintiff, entered into a settlement agreement with the United States Department of Health and Human Services (the "Agency," "HHS," or the "Department"), after the Agency rescinded a work offer, without explanation. *See* ECF 15-3 ("Settlement Agreement"). At the time of the revocation of the employment offer, Route was eight months pregnant. Route pursued a discrimination claim through the administrative process, and the Agency ultimately agreed to pay plaintiff the sum of $30,000. Unfortunately, the settlement payment never arrived.

According to plaintiff, shortly after the parties executed the Settlement Agreement, a fraudulent actor gained access to the email address of plaintiff's counsel and, with a forged payment form, redirected payment of Route's settlement funds to a bank account that did not belong to Route. When the fraud came to light, the Agency attempted to recall the funds, but its efforts were unsuccessful because there were no funds in the account.

The Department and the U.S. Equal Employment Opportunity Commission ("EEOC") subsequently determined that the Agency did not breach the Settlement Agreement. Therefore, the Agency declined to pay plaintiff an additional $30,000.

This suit followed.  In her Complaint, Route lodged a single claim against Xavier Becerra, Secretary of HHS, defendant, for "Sex Discrimination and Breach of Contract," pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.[1]  Pursuant to Fed. R. Civ. P. 25(d), Robert F. Kennedy, Jr. has been substituted as the defendant.[2]

HHS has moved to dismiss or, in the alternative, for summary judgment.  ECF 15.  The motion is supported by a memorandum of law (ECF 15-1) (collectively, the "Motion") and various exhibits related to plaintiff's claims.  ECF 15-2 through ECF 15-5. In particular, defendant has submitted the Agency's Investigation Report (ECF 15-2); the Settlement Agreement (ECF 15-3); the EEOC's Breach Allegation File (ECF 15-4); and a Complaint filed by the Agency with the Office of the Inspector General ("OIG") (ECF 15-5).[3]

Defendant asserts several grounds in support of the Motion.  According to HHS, plaintiff's breach of contract and discrimination claims are barred by sovereign immunity and therefore the claims must be dismissed for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1).  ECF 15-1 at 6.[4]  Moreover, defendant contends that Route's discrimination claim is subject to dismissal for failure to state a claim, pursuant to Rule 12(b)(6).  *Id.* at 8.  In the

---

[1] Although the Secretary of the Agency is the named defendant, I will generally refer to HHS, the Agency, or the Department as the defendant.

[2] Fed. R. Civ. P. 25(d) states: "An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded."

[3] Exhibits ECF 15-2 through ECF 15-5 total about 750 pages.

[4] Throughout the Memorandum Opinion, the Court cites to the electronic pagination. However, the electronic pagination does not necessarily correspond to the page number imprinted on a particular submission.

alternative, the Agency argues that it is entitled to summary judgment because plaintiff's breach allegation is untimely. *Id.* at 10. And, defendant contends that there is no evidence to support either the breach of contract claim or the discrimination claim. *Id.* at 10 –11.

Plaintiff opposes the Motion. ECF 19 ("Opposition"). Along with her Opposition, plaintiff has submitted the Declaration of Jocelyn Route. ECF 19-1. Plaintiff maintains that the matter is properly before the Court; that she has timely exhausted her administrative remedies; that she has plausibly alleged a claim for relief for employment discrimination; and that defendant breached the Settlement Agreement, thereby nullifying the Settlement Agreement's waiver provision. ECF 19. In Route's view, the case involves credibility determinations that are inappropriate to resolve by way of a motion to dismiss or on summary judgment. *Id.* at 2.

Defendant has replied. ECF 28 ("Reply"). In the Reply, defendant disputes that plaintiff exhausted her administrative remedies. *Id.* at 3.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall construe the Motion as a motion to dismiss, and I will grant it.

## I. Factual Background[5]

Plaintiff is a Black woman. ECF 1, ¶ 3.[6] She holds a master's degree in Social Work, and was previously employed by the District of Columbia Department of Behavioral Health

---

[5] The facts are drawn from the Complaint and, where appropriate, from the exhibits appended to defendant's Motion. ECF 1; ECF 15-2 through ECF 15-5. In connection with a motion to dismiss, the Court assumes the truth of the facts alleged in the suit. *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019). And, as discussed, *infra*, I may consider the exhibits to the extent that the Complaint incorporates them by reference, or when they are integral to the suit.

[6] Although plaintiff asserts in her Complaint that she is Black, she does not allege racial discrimination, in violation of Title VII.

("DCDBH").  *Id.* ¶ 5.  There, she worked as the Strategic Planning and Policy Engagement Officer.  *Id.*  In this role, she reported to Jelani Murrain and Barbara Bazron.  *Id.*

Dr. Bazron was the Director of DCDBH.  *Id.*  Prior to working at DCDBH, Bazron served as the Deputy Secretary of the Behavioral Health Administration of the Maryland Department of Health.  *Id.*  In this role, she "worked with individuals who hold senior positions at the Substance Abuse and Mental Health Services [Administration] of the U.S. Department of Health and Human Service[s] ('SAMHSA')."  *Id.*

In early 2021, Route applied for a position as Supervisory Public Health Analyst at SAMHSA's Center for Substance Abuse Treatment ("CSAT") Division.  *Id.* ¶ 6.  On October 21, 2021, after four rounds of interviews and a federal security clearance, plaintiff was offered the position.  *Id.*  She signed the final offer letter on the same date, and requested a start date of November 8, 2021, so that she could provide her current employer, DCDBH, with "a reasonable notice period."  *Id.*  And, on October 21, 2021, plaintiff submitted her letter of resignation to Murrain, her supervisor at DCDBH.  *Id.*

Plaintiff asserts that, at the time, SAMHSA was aware of her pregnancy.  *Id.*  Indeed, she claims that SAMHSA approved Route's "request to take unpaid leave for six weeks after childbirth."  *Id.*

Meena Abraham was the hiring manager and plaintiff's future supervisor at SAMHSA.  *Id.*  At the relevant time, Abraham had worked at SAMHSA for fifteen years.  *Id.*

Bazron, plaintiff's other supervisor at DCDBH, had a "professional relationship" with Yngvild Olsen, SAMHSA's Acting Director for the CSAT Division.  *Id.* ¶ 7.  The two met in 2016 when Bazron worked for the State of Maryland and Olsen served as the president of an organization that received funding from the State.  *Id.*  On or around October 22, 2021, Bazron

communicated with Olsen regarding Route's imminent departure from DCDBH and her impending employment with SAMHSA. *Id.* Plaintiff became aware of this when Abraham informed her that "Olsen communicated directly with Barbara Bazron concerning Ms. Route." *Id.*

Further, Murrain disclosed to plaintiff that SAMHSA's D.C. Project Officer had spoken with Bazron and told her that Route would be joining the SAMHSA team as a supervisor. *Id.* ¶ 8.[7] In response, Bazron allegedly said: "'How did [Ms. Route] get a good job?'" *Id.* (alteration in original).

Route met with Bazron on October 22, 2021. *Id.* ¶ 9. During the meeting, Bazron "admitted that she spoke to Ana DeJong, the Government Project Officer of SAMHSA, regarding the employment offer and disclosed that she was disappointed to learn about her potential departure from DCDBH through an outside source." *Id.*

Three days later, on October 25, 2021, SAMHSA rescinded plaintiff's employment offer, "without explanation." *Id.* ¶ 10. Route was "shocked" and experienced "an anxiety attack and great emotional distress, placing the life of her unborn child in jeopardy as she was already in a HighRisk [sic] pregnancy." *Id.*

In response to the rescission of Route's job offer, Abraham "protested to senior officials at SAMHSA who had communicated with Barbara Bazron . . . ." *Id.* Abraham complained that she had not been informed that plaintiff's "offer was being rescinded" and she contended that "the actions of senior officials were placing the Agency in jeopardy of legal action." *Id.* On November 1, 2021, "Abraham was abruptly placed on administrative leave". *Id.* Two days later, on November 3, 2021, Abraham was terminated from her employment. *Id.*

---

[7] Plaintiff does not provide the name of SAMHSA's D.C. Project Officer. But, the record indicates that the individual referenced by Murrain is Ana DeJong, as identified by Bazron during plaintiff's meeting on October 22, 2021. *See* ECF 15-2 at 6.

In light of the revocation of plaintiff's job offer, plaintiff emailed Murrain on October 26, 2021, at 11:37 a.m., to inform him that she "was rescinding her resignation, effective immediately." *Id.* ¶ 11. "Murrain verbally agreed to accept Ms. Route's request to rescind her resignation." *Id.* But, sometime after plaintiff's conversation with Murrain, he spoke with Bazron. *Id.* Bazron "decided" that DCDBH "would not allow Ms. Route to rescind her resignation." *Id.* According to plaintiff, "Bazron took this action in part to cover her interference with Ms. Route gaining employment with SAMHSA and to avoid having to answer for her actions." *Id.* As a result, Murrain emailed plaintiff at 4:57 p.m. on October 26, 2021, "advising her of the DCDBH's rejection [of] her rescission request." *Id.*

The next day, October 27, 2021, plaintiff filed an "EEO Complaint" against DCDBH with Frankie Wheeler, DCDBH's Director of Human Resources. *Id.* ¶ 12. Plaintiff "requested that the DCDBH accept the rescission of her resignation, immediately cease the replacement of her position, and, after acceptance and approval of her rescinded resignation, compensate her for the time missed." *Id.* ¶ 13. Route also "noted [in her complaint] that she was thirty-one weeks pregnant and that DCDBH was discriminating against her in deciding to refuse Ms. Route's rescission which violated the District's Personnel Manual." *Id.* ¶ 12. Further, plaintiff pointed out that her current job position had not yet been posted publicly, and no offer had been extended to a replacement. *Id.* ¶ 13.

Route alleges that, on November 5, 2021, "Defendant terminated Ms. Route's employment . . . without any advance notice of the termination in an arbitrary and capricious manner." *Id.* ¶ 14.[8]

---

[8] It is unclear what transpired on November 5, 2021, as plaintiff alleges earlier that her job offer from SAMHSA was rescinded on October 25, 2021. ECF 1, ¶ 10. It seems that plaintiff meant to allege that DCDBH terminated her on November 5, 2021, rather than defendant.

Plaintiff subsequently "filed a discrimination complaint against Defendant." *Id.* ¶ 15.  The

Agency's Investigation Report states, in part, ECF 15-2 ("Report") at 3 (internal citations omitted):

> Complainant made initial contact with an EEO Counselor on December 9, 2021, and the initial interview was held on January 7, 2022. On January 19, 2021 [sic], Complainant was issued a Notice of Right to File a Discrimination Complaint. On January 25, 2022, Complainant filed a Formal Complaint of Discrimination against the Agency. The Agency acknowledged receipt of the complaint on March 2, 2022.  On March 8, 2022, the Agency accepted the complaint for investigation and issued a Letter of Acceptance.

The Agency conducted an investigation from April 14, 2022 to June 3, 2022.  ECF 15-2 at

3.  As part of the investigation, the Agency interviewed Agency employees as well as Route and

obtained affidavits.  *Id.* at 5–9.  The Report, which details the findings of the investigation, was

signed and dated by Angela Baez, EEO Investigator, on June 23, 2022.  *Id.* at 21.

The Report summarizes the "testimony" contained in each affidavit.  *Id.* at 9–19.

According to the Report, Kim Nelson was a "management official" of HHS who served as the

"Acting Senior Advisor" to Olsen, SAMHSA's Acting Director for the CSAT Division.  *Id.* at 5.

Nelson averred in her affidavit that the Agency was "undergoing changes in leadership" and

several important individuals were not consulted by Abraham regarding her decision to hire Route.

*Id.* at 10.

Referencing Nelson's "testimony," the Report states, *id.* (internal citation omitted):

> [T]he decision to reassess the hire arose due to the concern that staff would be supervised by someone who was responsible for the grant in DC that had been placed on corrective action by their office– and Anna [sic] DeJong more specifically. At this point, Ms. Nelson and Dr. Olsen decided to go in a different direction and turned to HR director Robert Atanda who then initiated the process of rescinding Complainant's offer.

> Ms. Nelson states the concerns and changes in leadership as the ultimate reasoning for rescinding Complainant's offer and states that she had not rescinded any other job offers between 2019 and 2021.

With respect to Olsen's "testimony," the Report states: "When asked the reason for the rescindment, Dr. Olsen expressed that she had determined that Complainant had been a poor fit given that Complainant managed a program that had been placed on a corrective action plan in her prior employment." *Id.* at 11–12. According to the Report, Olsen said that "she had spoken with Complainant's former colleague, Trina Dutta, who expressed concerns with Complainant's treatment of subordinates at DCDBH." *Id.* at 12.

The Report also provides a summary of DeJong's "testimony." *Id.* at 17. The Report explains that she discussed the decision to hire plaintiff with Bazron on October 13, 2021. *Id.* DeJong allegedly learned from Bazron that Route was pregnant. *Id.* at 6. In particular, the Report states, *id.* at 17:

> After learning that Complainant would be joining SAMSHA [sic], Ms. DeJong states she discussed the decision with Dr. Bazron on an October 13, 2021, call with her. According to Ms. DeJong, Dr. Bazron had called her at the end of the day to discuss changing the time for an upcoming meeting, but Ms. DeJong, thinking that the news had not been confidential, mentioned to Dr. Bazron that an announcement had been made that Complainant had been hired as the SAMHSA Branch Chief for PPGB. At that point Dr. Bazron informed Ms. DeJong that she had thought that Complainant was on maternity leave. Ms. DeJong states that Dr. Bazron in a jovial way stated that SAMHSA has before taken staff from DCDBH so doing so in this instance had not been unheard of or unfamiliar. Ms. DeJong states she too had been familiar with DCDBH employees over time transitioning to SAMHSA, but she opined that going from a State [Substance Abuse Prevention and Treatment Block Grant] Coordinator in this instance to Chief of the [Performance Partnership Grant Branch] program could initially be awkward. Ms. DeJong explains she followed up and stated that this transition would likely "smooth out" in the long run, "like all things at SAMHSA."

On November 18, 2022, several months after the Report was issued, Route executed a Settlement Agreement with the Agency. ECF 1, ¶ 16; *see* ECF 15-3. The Settlement Agreement defines the Agency as "the United States Department of Health and Human Services ('HHS'), Substance Abuse and Mental Health Services Administration ('SAMHSA') . . . ." ECF 15-3 at 1.

8

Per the terms of that Settlement Agreement, defendant agreed to pay plaintiff the sum of $30,000 and agreed to pay David Branch, plaintiff's counsel, the sum of $10,000.  ECF 1, ¶ 16.

The Settlement Agreement also provides: "The effective date of this Agreement is the later of: (A) the eighth (8th) calendar day following Complainant's signature (if not revoked within the seven (7) calendar day period) or (B) the date this Agreement is executed by all signatories."  ECF 15-3, ¶ 9.  Route and Branch executed the Settlement Agreement on November 18, 2022.  *Id.* at 8–9.  Paolo Del Vecchio, the "Agency Settlement Official"; Aisha Moore, the Director of EEOSC; and Andrea Downing, counsel for the Agency, signed the Settlement Agreement on November 18, 2022, November 20, 2022, and November 21, 2022, respectively.  *Id*.  Therefore, the Settlement Agreement had an effective date of November 26, 2022.

Defendant's counsel drafted the Settlement Agreement.  ECF 1, ¶ 16.  Among other things, it required plaintiff to complete an automated clearinghouse ("ACH") Vendor/Miscellaneous Payment Form in order to receive payment.  *Id.*

The Settlement Agreement states, in part, ECF 15-3, ¶ 4:

> Complainant agrees to waive, release, and forever discharge the Agency, its officers, agents, assigns, employees, and representatives (in their official and/or personal capacities) from any claims, demands, or causes of action, which Complainant has or may have, arising from her EEO complaint and/or from her employment with the Agency. This release includes, but is not limited to, a release of any right to administrative, judicial, or any other type of relief, or of any claim to back pay, attorney's fees and costs, or other type of compensation. However, by entering into this Agreement, Complainant does not waive rights or claims that may accrue after the effective date of this Agreement.

Paragraph 5 of the Settlement Agreement is also pertinent.  It provides, in part, ECF 15-4 at 197:

> The Agency agrees to issue to Complainant one lump sum payment . . . Said lump sum payment shall be directly deposited into the bank account designated by Complainant.  The parties shall cooperate to ensure that the documentation required to process the payment is complete and accurate. . . . Complainant shall provide the

9

completed and fully signed ACH Form by email to Andrea M. Downing, Department of Health and Human Services, Office of the General Counsel, General Law Division, Mary Switzer Building, 330 C St., S.W., Room 2100, Washington, D.C. 20201, andrea.downing@hhs.gov, within 30 calendar days of Complainant's execution of this Agreement. The Defendant shall pay said payments within 60 calendar days of the effective date of this agreement or within 60 calendar day of receipt of the required form(s), whichever is later. The Defendant shall have no further liability towards Complainant, except as otherwise set forth in this Agreement. The Defendant will issue Internal Revenue Service 1099 forms to Complainant for the foregoing payment, and Complainant are [sic] solely responsible for reporting these payments to the appropriate taxing authorities and for payment of any and all taxes, interest, and penalties associated with these payments. . . .

As indicated, the Settlement Agreement provides that the "lump sum payment shall be directly deposited into the bank account designated by Complainant." *Id.* ¶ 5. And, it expressly states that, upon payment of the lump sum, the "Agency shall have no further liability towards Complainant, except as otherwise set forth in this Agreement." *Id.*[9] Further, the Settlement Agreement states: "If Complainant believes that the Agency has breached any term of this Agreement, she shall notify [the] Director, Equal Employment Opportunity Services Center (EEOSC), Office of Equal Employment Opportunity, Diversity and Inclusion, Assistant Secretary for Administration, via electronic mail (email) . . . in writing *within thirty (30) calendar days of the date Complainant knew or should have known of the alleged violation.*" *Id.* ¶ 12 (emphasis added).

Moreover, as indicated, the Agency's payment to Route was due "within 60 calendar days of the effective date of this agreement or within 60 calendar day of receipt of the required form(s), whichever is later." ECF 15-4 at 197. Plaintiff completed the ACH Form, as requested. ECF 1,

---

[9] In the version of the Settlement Agreement provided by defendant at ECF 15-3, this language is redacted. But, an unredacted version of this language appears at ECF 15-4 at 197–98.

¶ 17. It was submitted to Downing on November 28, 2022. ECF 15-4 at 89. Downing wrote in an email to Branch on December 15, 2022, stating: "Under the settlement agreement, the payments are not due until January 25, 2023 (60 days after November 26, 2022, the effective date of the agreement)." ECF 15-4 at 126.

In particular, on November 28, 2022, Downing received an email from admin@dbranchlaw.com with the signature block of Jonathan Fuentes, David Branch's legal assistant. ECF 15-4 at 89. Two ACH forms were attached to this email: One with Branch's bank account information, and one with plaintiff's Bank of America account information. *Id.* at 90–93. Each ACH form was electronically signed by the respective bank account owner. *Id.* at 90, 92. Branch was copied on the email, at the email address, davidbranch@dbranchlaw.com. *Id.* at 89.[10]

The next day, November 29, 2022, the Agency received an email from davidbranch@dbranchlaw.com. ECF 15-4 at 96. It was sent on the same email chain where Branch's legal assistant had sent the ACH forms the previous day. *Id*. A copy of the email is included here, as follows:

---

[10] Defendant points out that this is the same email address currently listed in Pacer for Branch. ECF 15-1 at 2. Plaintiff does not suggest that the email address is bogus.

11

| | |
|---|---|
| **From:** | davidbranch dbranchlaw.com |
| **To:** | Downing, Andrea (HHS/OGC) |
| **Cc:** | Downing, Andrea (HHS/OGC) |
| **Subject:** | Re: Route v. Barrera, Sec., U.S. Dept. of Health and Human Services, EEOC No. 570-2022-00976X |
| **Date:** | Tuesday, November 29, 2022 3:42:11 PM |
| **Attachments:** | JROUTESF3881-03b 112822 pdf.pdf |
| | DBRANCHSF3881-03b 112822.pdf |

Good afternoon,

Apologies, please disregard the previous ACH form sent yesterday. Our client would like to update her account information before the settlement funds are processed.

Attached is the updated ACH form, please update your records accordingly and make sure the funds are sent to the updated account as attached herewith.

Please acknowledge receipt of this email.

Thank you,

**David Branch**
Law Office of David A. Branch & Associates, PLLC
1828 L Street, NW
Suite 820
Washington, DC 20036
(202) 785-2804 phone
(202) 785-0289 fax

NOTICE: This correspondence contains confidential and privileged information intended for the sole use of the addressee. Any use or dissemination of the contents or metadata by someone other than that individual or its agent is prohibited. If you are not the addressee, please notify the sender immediately and delete the correspondence and any attachments.

Two ACH forms were attached to the email of November 29, 2022. One pertained to plaintiff and the other pertained to Branch. *Id.* at 98–101. The ACH form for Branch was identical to the one previously sent to Downing. But, as for plaintiff, the ACH form provided an account number for a Truist Bank account. *Id.* at 98. The form was electronically signed by "Jocelyn Route." *Id.*

Two minutes after receipt of the email, Downing responded: "Are these both updated or just one? If just one, please resend just the one that is updated." *Id.* at 102. Nine minutes later,

a response came from davidbranch@dbranchlaw.com, which stated: "Sorry just one, please see attached." *Id.* at 105. Attached to this email was the ACH form providing a Truist Bank account for Route. *Id.* at 108.

Route alleges in the Complaint that the email of November 29, 2022, was "fraudulent" and "should have raised red flags at [sic] the Defendant." ECF 1, ¶ 17. She continues: "The fraudulent vendor form contained a random 800 number. Defendant's counsel received the fraudulent vendor form and made no attempt to email or call Plaintiff or contact Plaintiff's counsel by telephone or call the telephone number for the bank on the vendor form to verify that Plaintiff had an account at that bank. Had Defendant's counsel taken any of these actions, the fraudulent ACH Vendor form would have been disclosed." *Id.*[11]

On December 2, 2022, and December 8, 2022, Branch emailed Downing to request that she confirm that the Agency had everything required to process the settlement payments. ECF 15-4 at 114–115. Downing responded on December 8, 2022, stating: "I checked with the team processing the payment and they're not able to provide a specific estimate, but they will try to update me once it has been processed." *Id.* at 116. Branch sent a follow-up email on December 14, 2022. *Id.* at 125. Downing responded the next day, assuring Branch that the settlement payment would be processed before the deadline of January 25, 2023. *Id.* at 126.

Route personally emailed Downing on February 3, 2023, with a copy to Branch. *Id.* at 128. She wrote, in part, *id.*: "I am contacting you to understand more about the settlement payment. I have not yet received payment but I received a 1099 tax form. Please verify when I should receive the settlement payment. I have ccd my Attorney David Branch on this correspondence for information purposes." In response, on February 8, 2023, Downing informed plaintiff that her

---

[11] Plaintiff does not explain why defendant had such duties with regard to the second email.

1099 tax form had been mailed the prior week. *Id.* at 132. On the same date, plaintiff clarified that she had received the tax form, but had not yet received payment from the Agency. *Id.*

On the same date, February 8, 2023, Downing wrote to Branch, stating: "Replying to you only. The payment was issued to Ms. Route on 12/28, the same day that your payment was issued, to the account ending in 3004." *Id.* The record does not reflect what action(s) Branch took after he was told by Downing that the Agency had issued payment on December 28, 2022, and that the payment was sent to an account ending in 3004.

Then, on February 21, 2023, Branch emailed Downing and Route. *Id.* at 134. He said, in part: "Ms. Route advises that she has not received the settlement payment. We have received the attorney's fees. Please check to see why the payment to her has not been made, especially since she received a 1099 tax form." *Id.*

On February 23, 2023, Downing responded to Branch, asking him to call her that day. *Id.* at 136. On the same date, Downing provided Branch with a screenshot of the Treasury Check Information System website to provide "confirmation that Ms. Route's payment was made on 12/28 to the account she provided on the ACH form." *Id.* at 138. Downing continued, *id.*: "I believe she can provide the trace number to her bank to get assistance in tracing the transaction on their side." The record does not indicate whether Branch contacted Downing at that time, as requested. Nor does it indicate whether Branch provided Route with a copy of the screenshot or the tracing information at that time.

Route contacted Downing and Branch on March 17, 2023, stating: "I have attempted to be more than patient with regard to the settlement payment. I have not received the deposit. I am respectfully requesting an update as soon as possible. I think it is crazy I have paid taxes on funds I have not received." *Id.* at 142.

14

On the same date, March 17, 2023, Route attempted to call Downing, but Downing did not answer. *Id.* at 145. Instead, Downing contacted Route by email, writing: "Because you are represented by counsel, I cannot communicate with you regarding this matter. I have emailed Mr. Branch regarding the status of your payment." *Id.* at 148.

Downing also wrote to Branch. *Id.* at 145. She stated, *id.*: "After sending the email below, Ms. Route attempted to call me this morning. I did not answer, as I do not want to communicate with your client about the subject matter of your representation. She did not leave a voicemail." Downing continued, *id.*: "I tried to call you just now to discuss, but your firm's number went directly to voicemail. Please advise as to whether Ms. Route used the tracing information that I sent you on February 23 to trace the transaction with her bank."

On March 20, 2023, Downing followed up with Branch. *Id.* at 155. She wrote: "I tried to call you just now to discuss my emails below, but your firm's number went directly to voicemail. Please advise as to whether Ms. Route used the tracing information that I sent you on February 23 to trace the transaction with her bank." *Id.* Two days later, on March 22, 2023, Downing sent Branch a similar email, advising: "Because I have not received a response from you regarding my emails below, unless I hear otherwise by COB on Friday, March 24, I am going to assume that you provided the tracing information I sent you on February 23 to Ms. Route and that she has used that information to locate the payment the Agency issued." *Id.* at 159.

Sixty days later, on April 24, 2023, Branch wrote to Downing, via email, stating: "Ms. Route still has not received the settlement payment and she has followed your instructions below. The funds are not at her bank. Please check again with your contact person and resubmit the payment. We are far beyond a reasonable period to resolve this matter." *Id.* at 164.

On the same date, Downing replied to Branch, providing the ACH form that Branch sent to her on November 29, 2022, and stating: "The information on the Agency's proof of payment matches the information Ms. Route provided on her ACH form.  Thus, please have Ms. Route re-verify that the information on the ACH form is correct and I will then go back to the Agency for further investigation." *Id.* at 347 (emphasis in original).

Branch responded that day, *i.e.*, April 24, 2023, asserting: "It looks like there has been some type of fraud. Ms. Route does not bank at Truist and the banking information that you sent us just now does not match what my legal assistant sent you in November. Attached is the banking information Ms. Route completed in November 2022." *Id.* at 179.  The ACH form that Branch attached to his email is identical to the first ACH form that Branch's office had sent to Downing. It indicates that Route sought payment to an account at Bank of America, not Truist.  ECF 15-4 at 92, 183.

Branch wrote again to Downing on April 24, 2023, stating, *id.* at 185:

> Also I just called the number listed on the fraudulent form and it is not Truist Bank but a Medical Alert business.  It looks like the person who did this altered the digits in numbers slightly.  Does your agency have a criminal investigative unit?  Please forward to them, and in the meantime, please make the payment to Ms. Route, since it looks like the crime occurred at the Agency.[12]

On April 25, 2023, Route wrote to Branch to inform him that she had "launched an investigation this morning with the FBI Internet Crime Complaint Center." *Id.* at 207.  She also informed Branch that she contacted Truist, "who shared that they were made aware of fraudulent activity back in January of 2023." *Id.*  She continued, *id.*: "They informed me that the funds in this account is [sic] frozen and HHS who initiated the payment can request a recall of the funds.

---

[12] In their briefs, the parties do not speculate as to the source of the fraud regarding the ACH form.

They also shared the account is classified as a BuisnessTREASURY [sic] Truist account that has received the funds."

Branch forwarded Route's message to Downing and asked her to "provide a response." *Id.* at 206.  Further, he wrote: "Also, for my own records, please send me the emails from November 29, 2022 so I can see who stole my identity and she [sic] the messages to you." *Id.*  Downing responded: "We are continuing to analyze the situation and are working to compile the pertinent communications in this matter.  As I mentioned in my email yesterday evening, I will provide a chronology of the communications at issue . . . ." *Id.* at 205.

Further, on April 26, 2023, Downing sent a declaration to Branch and Route for Route to execute. *Id.* at 203.  Downing explained that the declaration would allow "the Agency [to] attempt to recall the payment from Truist bank." *Id.*[13]  Plaintiff alleges that she completed a declaration attesting to the fact that she never received the payment of $30,000 from defendant. *Id.* ¶ 20.

On April 27, 2023, as promised, Downing provided Branch with "two chronologies of the communications between [Branch] and [Downing] from November 28, 2023 [sic], through April 24, 2023, related to Ms. Route's ACH form and the status of her payment under the Settlement Agreement."  ECF 15-4 at 245–253.  And, on May 9, 2023, the Agency attempted to recall the payment from the Truist Bank account on May 9, 2023.  ECF 15-1 at 3 (citing ECF 15-4 at 188–90).  But, on May 16, 2023, the Agency learned that the money could not be recalled "due to insufficient funds."  ECF 15-4 at 192; *see also* ECF 1, ¶ 21.

Also on May 16, 2023, Downing "filed a report with the Agency's Office of the Inspector General."  ECF 15-1 at 3 (citing ECF 15-4 at 49–55).  In that report, Downing explained what had

---

[13] Defendant did not provide a copy of the declaration—signed or unsigned—in the exhibits submitted by defendant to the Court.

occurred and wrote: "I am concerned that someone, whether a hacker or a bad actor in Mr. Branch's office, used Agency processes to fraudulently obtain, or try to obtain, $30,000.00." ECF 15-4 at 53. Route alleges: "Defendant's counsel later advised Plaintiff that the matter was being investigated by the Defendant's Office of Inspector General, but again failed to provide any updates on the payment." ECF 1, ¶ 20.

Thereafter, plaintiff did not hear from defendant for "several months". *Id.* ¶ 21. On January 14, 2024, Branch filed a formal complaint with the Agency's Equal Employment Opportunity Services Center ("EEOSC").[14] ECF 15-3 at 3 (citing ECF 15-4 at 197, 202); *see* ECF 1, ¶ 21. There, plaintiff alleged a claim of breach of the Settlement Agreement by HHS. ECF 15-3 at 3; ECF 15-4 at 197.

In connection with the complaint filed with EEOSC, the Agency submitted a "Response to Complainant's Allegation of Breach." ECF 15-4 at 218–234. HHS argued that Route's allegations of breach were untimely. *Id.* at 232–33. Moreover, the Agency claimed that it did not breach the terms of the Settlement Agreement, because it timely issued the payment to Route, in accordance with instructions from Branch. *Id.* at 218. The Agency wrote: "The instruction to issue Complainant's payment to the Truist account came from Branch and the Agency is not responsible for the ACH form with the Truist account information on it. Thus, the Agency has satisfied the terms of the parties' Settlement Agreement." *Id.* at 220.

On February 8, 2024, the Department issued a Final Agency Decision ("FAD"). *Id.* at 379–385. It found "that the Agency fully complied with the terms of the settlement agreement and therefore did not breach its terms." *Id.* at 385.

---

[14] The EEOSC is part of HHS. *See* ECF 15-2 at 72–73. The EEOSC receives discrimination complaints against the Agency and conducts investigations of those complaints. *Id.*

The Department concluded that Route's claim of breach was untimely. *Id.* at 383. In this regard, it noted that Branch "did not notify the EEOSC Director of the alleged breach until January 14, 2024, over ten months after the Agency notified [Branch] it deposited the payment, and over eight months after [Branch] allegedly discovered Complainant may not have received the payment due to fraud." *Id.*

With respect to the merits of the claim of breach, the Department said, *id.* at 384–85:

Complainant's counsel did not provide any information or proof indicating which specific emails he contended were fraudulent and which were authentic, or even any information regarding the manner the fraud happened. Significantly, throughout the record and in the submission of the breach claim, all email communications from Complainant's counsel, including the email which submitted the ACH vendor forms relied on to process the payment, emanated from counsel's identical business email account, with the exception of the November 28, 2022, email emanating from admin@dbranchlaw.com.

Further, the Department stated, *id.* at 385: "[E]ven accepting as true Complainant's contention that she never received the $30,000.00 payment and her counsel's contention that the Agency received a fraudulent email, it does not necessarily follow that the Agency breached the settlement agreement." HHS reasoned: "The recourse for this unfortunate situation does not require the Agency to make another payment for an incident it did not cause.[] Rather, as contemplated by the agreement,[] Complainant and/or her counsel may seek resolve [sic] through law enforcement authorities, Truist bank, and/or through any insurance Complainant's counsel may have addressing client or law practice protection.[]" *Id.*

On March 6, 2024, plaintiff appealed the FAD to the EEOC. *Id.* at 397. The EEOC issued a decision on September 24, 2024, affirming the FAD. *Id.* at 418. The EEOC found that HHS did not breach the Settlement Agreement. *Id.* at 426.

The EEOC stated, *id.* at 424: "In the instant case, we find that the Agency is in substantial compliance with the agreement." Moreover, the EEOC said, *id.* (emphasis in original):

Despite Counsel alleging the fraud was discovered in April 2023, the record reveals Agency Contact *repeatedly* communicated to [plaintiff's] Counsel dating back to December 2022, at Counsel's email of record, about the funds to Complainant and Counsel. More significantly, when Complainant herself directly emailed Agency Contact, Agency Contact emailed detailing the transfer made on December 28, 2022, and called Counsel, without a response. When Complainant called and emailed Agency Contact again, Agency Contact replied to Complainant, with Counsel copied, advising that as she is represented by counsel, Agency Contact could not speak with her but her Counsel was informed regarding the status of the payment. Agency Contact again emailed and called Counsel advising the transfer had been made in December 2022, and requested he contact Agency Contact. Counsel did not respond to that request.

The EEOC continued, *id.* at 425:

The mystery of how an allegedly fraudulent bank account for Complainant and correct bank account for Counsel were in the same email is a matter for Complainant and her counsel to resolve. These emails also contained the specific case caption, EEOC Hearing number, and other case informed that was confidential between the parties. Complainant's counsel and Complainant may consider investigating the ownership of the Truist account.

This suit followed on December 31, 2024. *See* ECF 1. As noted, Route brings a combined claim against defendant for sex discrimination and breach of contract. *Id.* ¶¶ 23–28.[15] In support of Route's claim, she states: "By failing to pay Plaintiff the agreed upon settlement amount, Defendant breached the Settlement Agreement and Plaintiff is entitled to the funds due under the Settlement Agreement or reinstatement of her claims." *Id.* ¶ 24. Further, she asserts: "As a direct and proximate result of Defendant's actions, Plaintiff Route suffered and continues to suffer, among other things, severe emotional distress requiring placement in an intensive mental health counseling program, humiliation, emotional pain, suffering and depression[.]" *Id.*

Moreover, according to plaintiff, the fraud was not "discovered" until April 2023. ECF 1, ¶ 19. She states, *id.*: "Plaintiff's counsel informed Defendant's counsel that Plaintiff never

---

[15] ECF 1 does not contain paragraphs numbered 25 through 27.

received the payment and there was fraud since Plaintiff's Counsel did not send an email directing the Defendant to pay the funds to a second account and Plaintiff did not have an account at Truist Bank." Route also complains that HHS "failed to update Plaintiff on the status of her payment." *Id.* ¶ 21. According to Route, she "was led to believe that the funds were frozen in an account at Truist Bank and believed that the Defendant was still attempting to retrieve the funds." *Id.*

## II. Standards of Review

Defendant moves to dismiss the Complaint pursuant to Rule 12(b)(1), for lack of subject matter jurisdiction. In addition, HHS moves to dismiss under Rule 12(b)(6), alleging failure to state a claim or, in the alternative, for summary judgment under Rule 56. ECF 15-1. As discussed below, I shall construe the Motion as a motion to dismiss. The applicable legal standards follow.

### A. Fed. R. Civ. P. 12(b)(1)

Defendant seeks dismissal of the Complaint, pursuant to Rule 12(b)(1), claiming lack of subject matter jurisdiction. *See* ECF 15-1 at 6.

"[B]efore a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). In *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 432 (4th Cir. 2014), the Fourth Circuit observed: "Fundamental to our federal system is the principle that '[f]ederal courts are courts of limited jurisdiction.'" (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994)) (alteration in *Hanna*).

"A motion to dismiss for lack of subject-matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), is a challenge to the Court's 'competence or authority to hear the case.'" *Morales v. United States Postal Serv.*, LKG-24-02906, 2025 WL 3170845 (D. Md. Nov. 13, 2025) (quoting

*Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005)).  The determination of jurisdiction is a "threshold matter[.]"  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction.  *See Demetres v. E. W. Const., Inc.,* 776 F.3d 271, 272 (4th Cir. 2015); *see also The Piney Run Preservation Ass'n v. Cty. Comm'rs Of Carroll Cty.*, 523 F.3d 453, 459 (4th Cir. 2008); *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *see Morales*, 2025 WL 3170845, at \*2; *Farley v. United States Sec'y of Hous. Urb. Dev.*, PX-24-2718, 2025 WL 3151944, at \*1 (D. Md. Nov. 12, 2025); *Touwe v. Mayorkas*, Civ. No. GLS-24-935, 2025 WL 2592225, at \*2 (D. Md. Sept. 8, 2025).  A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge or a factual challenge. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *accord Hutton v. Nat'l Bd. of Examiners Inc.,* 892 F.3d 613, 620-21 (4th Cir. 2018); *Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013).

In a facial challenge, "the defendant must show that a complaint fails to allege facts upon which subject-matter jurisdiction can be predicated." *Hutton*, 892 F.3d at 621 n.7 (citing *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017)); *see also Kerns,* 585 F.3d at 192.  Alternatively, in a factual challenge, "the defendant maintains that the jurisdictional allegations of the complaint are not true." *Hutton*, 892 F.3d at 621 n.7 (citing Beck, 848 F.3d at 270).  In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't Of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Beck*, 848 F.3d at 270; *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 333 (4th Cir. 2014); *Evans*, 166 F.3d at 647.

Here, defendant contends that plaintiff's Complaint fails to allege facts upon which she can overcome the bar of sovereign immunity.  Thus, defendant asserts a facial challenge.

### B.  Fed. R. Civ. P. 12(b)(6)

Defendant also seeks dismissal under Rule 12(b)(6), claiming that plaintiff failed to state a claim upon which relief could be granted.  ECF 15-1 at 8–9.  A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6).  *Nadendla v. WakeMed*, 24 F.4th 299, 304–05 (4th Cir. 2022); *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021); *Fessler v. Int'l Bus. Machs. Corp.*, 959 F.3d 146, 152 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017), *cert. denied*, 583 U.S. 1008 (2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).

"[A] ruling under Rule 12(b)(6) presents a pure question of law[.]"  *Guzman v. Acuarius Night Club LLC*, 167 F.4th 217, 221 (4th Cir. 2026).  The "court's role under Rule 12(b)(6) is to evaluate the sufficiency of a complaint . . . ."  *Doriety v. Sletten*, 109 F.4th 670, 679 (4th Cir. 2024).  Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325–26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002).  Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendant with "fair notice"

of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *see Brown-Hyatt v. Brenner*, SAG-25-1737, 2025 WL 2855769, at \*2 (D. Md. Oct. 8, 2025) (same).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions'"); *see also Rice v. Adams,* __ F.4th __, 2026 WL 996964, at \*2 (4th Cir. Apr. 14, 2026); *United States ex rel. Sheldon v. Allergan Sales, LLC*, 170 F.4th 227, 242 (4th Cir. 2026); *L.M. by Roe #1 v. Graham*, 168 F.4th 196, 200 (4th Cir. 2026); *Johnson v. Baltimore City, Maryland*, 163 F.4th 808, 814 (4th Cir. 2026); *Harmon v. Coleman Worldwide Moving, LLC*, 2025 WL 3764220, at \*1 (4th Cir. Dec. 30, 2025) (per curiam); *Seabrook v. Driscoll*, 148 F.4th 264, 269 (4th Cir. 2025); *Sysco Mach. Corp. v. DCS USA Corp.*, 143 F.4th 222, 228 (4th Cir. 2025); *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021); *Fauconier v. Clarke*, 966 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan*, 918 F.3d at 317–18; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). A plausible claim is one that is more than merely conceivable or speculative. *Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see Sheldon*, 170 F.4th at 242. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

24

As the Fourth Circuit has recognized, plaintiffs are not required "to prove [their] case in the complaint." *Robertson v. Sea Pines Real Est. Cos., Inc.*, 679 F.3d 278, 291 (4th Cir. 2012) (recognizing that "[t]he requirement of nonconclusory factual detail at the pleading stage is tempered by the recognition that a plaintiff may only have so much information at [her] disposal at the outset"); *see Lowy v. Daniel Defense, LLC,* 167 F.4th 175, 193 (4th Cir. 2026). Furthermore, Rule 12(b)(6) "does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Indeed, it is "error" for a district judge to give "a serious claim the back of its hand" because it does not believe the plaintiff's allegations. *See Colon Health Ctrs. of Am., LLC v. Hazel,* 733 F.3d 535, 545 (4th Cir. 2013).

Rather, in considering a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Env't Hydrogeological Consultants, Inc. v. N. Am. Risk Servs., Inc.,* 2026 WL 674349, at *2 (4th Cir. Mar. 10, 2026); *Cooper v. City of Wheeling*, 169 F.4th 220, 223 (4th Cir. 2026); *Walls v. Prince George's Cnty.*, 2026 WL 497988, at *1 (4th Cir. Feb. 23, 2026) (per curiam); *Johnson*, 163 F.4th at 814; *Bermeo v. Andis*, 163 F.4th 87, 93 (4th Cir. 2025)*; Hebb v. City of Asheville, N. Carolina,* 145 F.4th 421, 432 (4th Cir. 2025); *Barbour v. Garland,* 105 F.4th 579, 589 (4th Cir. 2024); *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020); *Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cnty.*, 628 F.3d 140, 146 (4th Cir. 2010). Nor does the court accept "'legal

conclusions couched as facts . . . .'"  *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (citation omitted).

"A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought.  *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).  "Mere recitals of a cause of action, supported only by conclusory statements, are insufficient to survive" a Rule 12(b)(6) motion.  *Morrow v. Navy Federal Credit Union*, 2022 WL 2526676, at *2 (4th Cir. July 7, 2022); *see Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021).  That said, a plaintiff need not include "detailed factual allegations" to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam).  However, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief.  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted); *see Johnson v. Navy Fed. Credit Union*, 2025 WL 2437832, at *2 (4th Cir. Aug. 25, 2025) (per curiam).

In other words, the rule demands more than bald accusations or mere speculation.  *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient.  *Twombly*, 550 U.S. at 555.  "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief.  *Iqbal*, 556 U.S. at 678; *see Katti v. Arden*, 161 F.4th 217, 224 (4th Cir. 2025).  Instead, to

satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable, and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

Ordinarily, when ruling on a Rule 12(b)(6) motion, a court does not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023); *Bing v. Brio Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear [ ] *on the face of the complaint.*'" *Goodman*, 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst*, 4 F.3d at 250); *see L.N.P. v. Kijakazi*, 64 F.4th 577, 585–86 (4th Cir. 2023).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours*, 637 F.3d at 448); *see Goines*, 822 F.3d at 166 (citation omitted) (a court may properly consider documents that are "explicitly incorporated into the complaint by reference . . . and those attached to the complaint as exhibits");

27

*see also Redding v. Noem,* 168 F.4th 203, 205 (4th Cir. 2026); *Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Under limited circumstances, however, a court may consider documents beyond the complaint, without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). A court may "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Finn v. Humane Soc'y of the United States*, 160 F.4th 92, 96 n.2 (4th Cir. 2025); *Doriety,* 109 F.4th at 679; *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied sub nom.*, *City of Greensboro v. BNT Ad Agency, LLC*, 583 U.S. 1044 (2017); *Kensington Volunteer Fire Dep't v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012); *Carrington Sturgis v. Warden Jeff Nines*, SAG-25-841, 2025 WL 3240039, at *2 (D. Md. Nov. 20, 2025); *Kristen Moody v. The Board of Education of Wicomico* County, SAG-25-00642, 2025 WL 3119201, at *4 (D. Md. Nov. 7, 2025). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md.

2011) (emphasis in *Chesapeake Bay Found., Inc.*) (citation omitted); *see also Brentzel v. Fairfax Transfer and Storage, Inc.,* 2021 WL 6138286, at *2 (4th Cir. Dec. 29, 2021) (per curiam).

In the usual course, the "exhibit-prevails rule" applies.  It "provides that 'in the event of [a] conflict between the bare allegations of the complaint and any exhibit attached . . . the exhibit prevails.'"  *Goines*, 822 F.3d at 166 (citing *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)).  However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the [party] attached it."  *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)).  "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper."  *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

In the context of a Rule 12(b)(6) motion, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'"  *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.,* 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011); *Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  However, under Fed. R. Evid. 201, a court may only take judicial notice of adjudicative facts if they are "not subject to reasonable dispute," in that they are "(1) [ ] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

29

In addition, a court "may take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment." *Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 F. App'x 200 (4th Cir. 2016). And, the Fourth Circuit has stated that a district court may take "judicial notice of its own records." *Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990); *see also Thurman v. Robinson*, 51 F.3d 268, 1995 WL 133350, at *2 (4th Cir. Mar. 28, 1995) (per curiam); *United States Fidelity & Guar. Co. v. Lawrenson,* 334 F.2d 464, 467 (4th Cir. 1964). Courts may also take judicial notice of matters of public record, including EEOC charges and decisions in employment discrimination cases. *Wooten v. Univ. of Maryland, Baltimore*, 733 F. Supp. 3d 402, 418 (D. Md. 2024).

The consequences of a court taking judicial notice are significant. For example, where the trial court has taken judicial notice of a fact in a civil matter, the judge must instruct the jury to accept that fact as conclusive. Fed. R. Evid. 201(g). A court that takes judicial notice may also preclude the introduction of evidence to disprove the noticed fact. *See* Fed. R. Evid. 201(g) Advisory Committee Note (discussing controversy surrounding whether evidence may be admitted to disprove facts judicially noticed). As stated in the Advisory Committee Notes to Rule 201, a "tradition of circumspection" surrounds judicial notice of adjudicative facts, and courts should exercise caution in taking judicial notice, doing so only when the matter is beyond reasonable controversy. Fed. R. Evid. 201(b) Advisory Committee Note.

It is also well settled that a plaintiff may not cure a defect in a complaint or otherwise amend a complaint by way of opposition briefing. *See, e.g., Henderson v. City of Roanoke*, 2022 WL 704351, at *3 (4th Cir. Mar. 9, 2022) (per curiam) ("[N]o litigant is exempt from the well-established rule 'that parties cannot amend their complaints through briefing or oral advocacy.'")

30

(quoting *So. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013)); *Glenn v. Wells Fargo Bank, N.A.*, DKC-15-3058, 2016 WL 3570274, at *3 (D. Md. July 1, 2016) (declining to consider declaration attached to brief opposing motion to dismiss because, among other things, it included allegations not included in the suit); *Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998).[16]

### C. Motion to Dismiss or, in the Alternative, for Summary Judgment

Defendant's Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. *See* ECF 15-1. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). Under Rule 12(b)(6), however, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d);

---

[16] In civil rights cases, at the Rule 12(b)(6) stage, courts "must be especially solicitous of the wrongs alleged" and "must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged*." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (internal quotations and citations omitted) (emphasis in original); *accord Pinkett v. Crowder*, ELH-13-2509, 2014 WL 3571802, at *6 (D. Md. July 18, 2014) (citing *Edwards*).

*see Adams Housing, LLC v. The City of Salisbury, Maryland,* 672 F. App'x 220, 222 (4th Cir. 2016) (per curiam).

A court may not convert a motion to dismiss to one for summary judgment sua sponte, unless it gives notice to the parties that it will do so. *See Laughlin v. Metro Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.,* 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 F. App'x at 222 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.' ") (citation omitted). However, when the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin,* 149 F.3d at 261.

Nevertheless, summary judgment is ordinarily inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours,* 637 F.3d at 448; *see Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023); *Putney v. Likin*, 656 F. App'x 632, 638-39 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015).  In that circumstance, however, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty*

*Internet Domain Names,* 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 961 (4th Cir. 1996)).

To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition" without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods,* 302 F.3d at 244–45 (discussing affidavit requirement of former Rule 56(f)). Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore,* 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS,* DKC-08-2586, 2011 WL 665321, at *20 (D. Md. Feb. 14, 2011)). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Nguyen v. CNACorp.,* 44 F.3d 234, 242 (4th Cir. 1995) (citation omitted). A non-moving party's Rule 56 request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.,* 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham,* 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd,* 266 Fed. Appx. 274 (4th Cir. 2008), *cert. denied,* 555 U.S. 885 (2008).

Here, plaintiff has not submitted an affidavit under Rule 56 asserting a need to conduct discovery. And, as indicated, defendant moves to dismiss plaintiff's case arguing, *inter alia*, lack of subject matter jurisdiction. Of course, the Court must have subject matter jurisdiction before it can rule on motions like a motion for summary judgment. *See, e.g., Steel Co.*, 523 U.S. at 118 ("The requirement that jurisdiction be established as a threshold matter spring[s] from the nature

and limits of the judicial power of the United States and is inflexible and without exception." (alteration in original) (internal quotation marks omitted)).

I shall construe defendant's Motion as a motion to dismiss.  As noted, a court ordinarily does not "consider matters outside the pleadings . . . when ruling on a motion to dismiss." *Bosiger,* 510 F.3d at 450. However, "when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" *Am. Chiropractic Ass'n,* 367 F.3d at 234 (alterations in original) (quoting *Phillips,* 190 F.3d at 618); *see also Philips,* 572 F.3d at 180 (observing that a court may properly consider documents "attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic" (citations omitted)). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains,* gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc.,* 794 F. Supp. 2d at 611 (citation omitted) (emphasis in original).

Here, as indicated, defendant attaches to its Motion the Agency's Report (ECF 15-2), a redacted version of the Settlement Agreement (ECF 15-3), the EEOC's Breach Allegation File (ECF 15-4), and the OIG Complaint (ECF 15-5).  But, I need not convert the Motion to one for summary judgment to consider these documents.  Each of these documents is "expressly incorporated into the complaint by reference" and thus may be considered in resolving the Motion, without converting it to one for summary judgment.  *Goines*, 822 F.3d at 166 (stating that a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits"). And, as noted, the Court may take judicial notice

of EEOC charges and decisions in employment discrimination cases. *Wooten*, 733 F. Supp. 3d at 418.

To be sure, in her Complaint, plaintiff referenced these documents and explicitly relied on them in asserting her claims. *See* ECF 1, ¶ 15 (Report), ¶ 16 (Settlement Agreement), ¶ 21 (OIG Complaint), ¶ 22 (EEOC Breach Allegation File). And, plaintiff does not contest the Court's consideration of these documents or their authenticity. *See* ECF 19. Moreover, in her Opposition, plaintiff admits that her Complaint "incorporates by reference[] the underlying report of investigation and testimony . . . ." *Id.* at 2. Accordingly, I will consider them in analyzing the contentions.

As noted, plaintiff submitted with her Opposition the Declaration of Jocelyn Route. ECF 19-1. But, this Declaration is neither incorporated by reference nor integral to plaintiff's Complaint. Therefore, I may not consider it.

### III. Discussion

#### A. Sovereign Immunity

#### 1.

As indicated, the Complaint contains one claim, titled: "Sex Discrimination and Breach of Contract." ECF 1 at 7. At the motion to dismiss stage, courts "must be especially solicitous of the wrongs alleged" in civil rights cases. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (internal quotations and citations omitted) (emphasis in original).[17] HHS contends, among

---

[17] It is generally improper to combine two discrete claims—such as one for sex discrimination and one for breach of contract—in a single count. *See* Fed. R. Civ. P. 10(b) ("If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense."); *see also Fields v. King*, 576 F. Supp. 3d 392, 400 n.2 (S.D.W. Va. 2021) ("Alleging each of these causes of action in individual counts would undoubtedly promote clarity, and the causes of action alleged in Count

other things, that plaintiff's Complaint is barred by sovereign immunity. ECF 15-1 at 6. In support of this contention, HHS relies, *inter alia*, on *Frahm v. United States*, 492 F.3d 258 (4th Cir. 2007). ECF 15-1 at 6–7. According to HHS, the Court in *Frahm* held that Congress's waiver of sovereign immunity for a Title VII suit involving the federal government as the employer did not extend to monetary claims against the government for breach of a settlement agreement resolving the Title VII dispute. Therefore, HHS argues that plaintiff's breach of contract claim is subject to dismissal for lack of subject matter jurisdiction. *Id.* at 7.

Further, HHS seeks to extend the holding of *Frahm* to plaintiff's claims for nonmonetary relief and "all underlying claims of discrimination." *Id.* at 7–8. According to defendant, "the determinative fact in this case is that the discrimination claim ***depends upon the existence of a breach of the settlement agreement.***" *Id.* at 8 (emphasis in original). Therefore, in defendant's view, the entire Complaint is barred by sovereign immunity. *Id.*

Plaintiff counters that Title VII is "an unequivocal waiver of sovereign immunity for federal employees alleging discrimination by their employing agencies", and therefore "this Court [has] jurisdiction over Plaintiff's statutory discrimination claims." ECF 19 at 10 (citing 42 U.S.C.

---

I are founded on separate occurrences"). Nevertheless, defendant does not assert that the claim is defective because it is duplicitous. Therefore, I will not address the improper format.

The Supreme Court has explained: "In our adversarial system of adjudication, we follow the principle of party presentation." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020). "[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). The "courts 'call balls and strikes'; they don't get a turn at bat." *Clark v. Sweeney*, 607 U.S. 7, 9 (2025) (per curiam); *see also Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985) (stating that, in the context of pro se plaintiffs, the Court "will not . . . require the district courts to anticipate all arguments that clever counsel may present in some appellate future. To do so . . . would . . . transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.").

§ 2000e-16(c)).  According to plaintiff, because she seeks to bring a discrimination claim pursuant to Title VII, the Court has subject matter jurisdiction.  ECF 19 at 10.

Route also seeks to distinguish *Frahm*.  *Id.*  She notes that *Frahm* "involved a plaintiff who sought damages in a stand-alone breach action, not a plaintiff—like Ms. Route—who is seeking to proceed on her Title VII claims after demonstrating that the agency materially breached the settlement."  *Id.*

Further, plaintiff asserts: "The record here demonstrates a classic failure of consideration that renders the release unenforceable."  *Id.*  She argues that because defendant "misdirected" the settlement funds to a fraudulent bank account, she "never received the bargained-for consideration", thus rendering the Settlement Agreement void.  *Id.* at 10–11.  And, Route maintains that whether she "knowingly and voluntarily released her [discrimination] claims [pursuant to the Settlement Agreement] is a merits issue, not a matter of subject-matter jurisdiction."  *Id.*  She insists that it is inappropriate to decide a merits issue in the context of a motion to dismiss.  *Id.*

**2.**

"As a sovereign, the United States is immune from all suits against it absent an express waiver of its immunity." *Durden,* 736 F.3d at 296 (quoting *Welch v. United States,* 409 F.3d 646, 650 (4th Cir. 2005)).  "Jurisdiction over any suit against the Government requires a clear statement from the United States waiving sovereign immunity . . . The terms of consent to be sued may not be inferred, but must be unequivocally expressed." *United States v. White Mountain Apache Tribe,* 537 U.S. 465, 472 (2003) (*quoting United States v. King,* 395 U.S. 1, 4 (1969)).  Moreover, a waiver of sovereign immunity "must be construed strictly in favor of the sovereign and not enlarged beyond what the language requires." *United States v. Nordic Village, Inc.,* 503 U.S. 30, 34 (1992); *see Frahm,* 492 F.3d at 262 ("Even if the matter were at all ambiguous, the issue is

resolved by the rule that the 'scope' of a 'waiver of the Government's sovereign immunity will be strictly construed . . . in favor of the sovereign.'") (quoting *Lane v. Pena,* 518 U.S. 187, 192 (1996)).

Plaintiff's discrimination claim is founded on Title VII. It provides: "It shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Moreover, Title VII prohibits an employer from discriminating against an employee because the employee has filed a grievance or complaint regarding an employment practice that allegedly violates Title VII's antidiscrimination provision. *Id.* § 2000e–3(a).

Under 42 U.S.C. § 2000e–16, Congress has expressly waived sovereign immunity to allow the United States to be sued in a Title VII discrimination case where the federal government is the employer. *Frahm*, 492 F.3d at 262.[18] But, as a prerequisite to a civil suit under Title VII, a plaintiff must first seek administrative review of her grievance and comply with various administrative procedures. *See Young v. Nat'l Ctr. for Health Serv. Research,* 828 F.2d 235, 237 (4th Cir. 1987). To do so, a plaintiff must file a "charge" of discrimination with the EEOC or an appropriate state or local agency within 180 days "after the alleged unlawful employment practice occur[s]." 42 U.S.C. § 2000e–5(e)(1); *see Balas v. Huntington Ingalls Indus., Inc.,* 711 F.3d 401, 406 (4th Cir. 2013); *see also Berry v. Gutierrez,* 587 F. Supp. 2d 717, 726 (E.D. Va. 2008) ("Title VII only allows an employee to file a civil action on an underlying complaint of discrimination

---

[18] Initially, Title VII did not protect federal employees. *See* 42 U.S.C. § 2000e(b) (excluding the United States from the definition of "employer"). In 1972, however, Congress amended Title VII to provide that a federal employee who has exhausted his administrative remedies "may file a civil action as provided in section 2000e–5 of this title" against the "head of the department, agency, or unit, as appropriate." 42 U.S.C. § 2000e–16(c); *see Bullock v. Napolitano,* 666 F.3d 281, 283–84 (4th Cir. 2012), *cert. denied,* 568 U.S. 822 (2012).

after an agency has issued a final action on the complaint or the EEOC has taken final action on an agency's decision or order regarding an underlying complaint of discrimination.").

It appears that when Route withdrew her Title VII claim, she never completed administrative exhaustion with respect to her Title VII claim. *See*, *e.g.*, *Miles v. Dell, Inc.,* 429 F.3d 480, 491 (4th Cir. 2005); *Bryant v. Bell Atl. Md., Inc.,* 288 F.3d 124, 132 (4th Cir. 2002); *see also Hart v. Lew*, 973 F. Supp. 2d 561, 576 (D. Md. 2013) (stating that "if an employee files a formal complaint or appeal, but withdraws or settles it before a final decision is issued, the employee has not exhausted her remedies and thus may not file suit.").

In any event, when Route executed the Settlement Agreement, she waived her right to pursue her Title VII claim. *See* ECF 15-3, ¶ 4. Of import, "[i]n the context of a private settlement agreement, the Supreme Court has held that the enforcement of settlement agreements 'is more than just a continuation or renewal of the dismissed suit,' and that it 'requires its own basis for jurisdiction.'" *Berry,* 587 F. Supp. 2d at 727 (quoting *Kokkonen,* 511 U.S. at 378). Therefore, even though a federal court generally has jurisdiction with respect to a Title VII claim, the Court here must find a basis to set aside that waiver, in order to reach the Title VII claim. To do so, the Court must find a breach of the Settlement Agreement.

As discussed, plaintiff never received the settlement proceeds, apparently because of a bad actor. On this basis, she claims a breach of the Settlement Agreement by HHS. However, the Court cannot reach the claim of breach unless the Court has jurisdiction to do so. And, even assuming that HHS is to blame for the modern-day electronic theft, or that the Court has jurisdiction as to the breach claim, plaintiff's underlying discrimination claim is not automatically revived because of an alleged breach of the Settlement Agreement.

Section 1614.504(a) of 29 C.F.R. establishes a remedial scheme for addressing an agency's alleged breach of a settlement agreement.  It provides:

> If the complainant believes that the agency has failed to comply with the terms of a settlement agreement or decision, the complainant shall notify the EEO Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance. The complainant may request that the terms of settlement agreement be specifically implemented or, alternatively, that the complaint be reinstated for further processing from the point processing ceased.

In addition, the complainant "may appeal an agency's final action or dismissal of a complaint" to the EEOC.  29 C.F.R. § 1614.401(a).  Further, 29 C.F.R. § 1614.504(c) states:

> If the Commission determines that the agency is not in compliance with a decision or settlement agreement . . . it may order such compliance with the decision or settlement agreement, or, alternatively, for a settlement agreement, it may order that the complaint be reinstated for further processing from the point processing ceased.[19]

As noted, Downing told Branch on February 8, 2023 *and* February 23, 2023, that payment had been made to Route on December 28, 2022, to an account ending in 3004.  ECF 15-4 at 132, 140.  But, it was not until January 14, 2024, that plaintiff filed a formal complaint with EEOSC.  ECF 15-3 at 3.  Thus, plaintiff did not notify the Agency of its alleged noncompliance within 30 days of when she knew or should have known of the noncompliance.

Defendant places great weight on *Frahm*, 492 F.3d at 258, maintaining that it is "conclusive here."  ECF 15-1 at 6.  In *Frahm*, the Fourth Circuit addressed the issue of whether Title VII's

---

[19] Section 1614.504 "is silent on whether a complainant can appeal the EEOC decision to a federal court for further review."  *Kaplan v. James*, 25 F. Supp. 3d 835, 839 (E.D. Va. 2014).  A waiver of sovereign immunity must be unequivocal, and silence in a regulation cannot confer jurisdiction.  *Robinson v. United States Dep't of Educ.,* 917 F.3d 799, 801 (4th Cir. 2019) (citing *Lane*, 518 U.S. at 192).  Moreover, even if a regulation were to permit a complainant to appeal to federal court, "government regulations alone, without the express intent of Congress, cannot waive sovereign immunity."  *Heller v. United States,* 776 F.2d 92, 98 n. 7 (3d Cir. 1985); *see Bosman v. United States,* Nos. RGD-12-140, RGD-12-141, 2012 WL 5957354, at *8 (E.D. Va. Nov. 27, 2012) (quoting *Mitzelfelt v. Dep't of Air Force,* 903 F.2d 1293, 1296 (10th Cir. 1990)).

statutory waiver of sovereign immunity extends to claims against the federal government for breach of a settlement agreement. *Id.* at 258.  There, the Internal Revenue Service ("IRS") and Frahm, a former IRS employee, entered into a settlement agreement in regard to a discrimination claim lodged by Frahm against the IRS.  *Id.* at 260.  The government conceded it violated the settlement agreement, and the parties subsequently stipulated to a voluntary dismissal of Frahm's Title VII gender discrimination and retaliation claim.  *Id.* at 261.  The only remaining count was Frahm's claim for breach of the settlement agreement, for which Frahm sought damages.  *Id.*  The district court "determined that Miss Frahm is not entitled to relief for two reasons: 1) the language of the settlement agreement does not allow for monetary damages as a remedy in case of breach, and 2) 29 C.F.R. § 1614.504(a) provides for two exclusive alternatives in the event of breach of a settlement agreement, neither of which includes monetary recovery."  *Id.* at 262.

In affirming the district court, the Fourth Circuit recognized that the settlement agreement did not contemplate monetary damages for Frahm because of the IRS's breach.  *Id.* at 262.  Rather, the agreement allowed Frahm to "'reassert any and all claims covered by this Agreement.'"  *Id.* (quoting settlement agreement).

Moreover, the Court recognized that although Congress has "waived sovereign immunity in Title VII suits where the federal government is the employer", the "statutory waiver does not expressly extend to monetary claims against the government for breach of a settlement agreement that resolves a Title VII dispute."  *Id.* (citing 42 U.S.C. § 2000e–16(d)).  It reasoned that "because neither the settlement agreement nor a statute allow Miss Frahm to sue the government for breach of the settlement agreement, her action was properly dismissed."  *Frahm*, 492 F.3d at 262.  The Court added: "Even if the matter were at all ambiguous, the issue is revolved [sic] by the rule that

the 'scope' of a 'waiver of the Government's sovereign immunity will be strictly construed . . . in favor of the sovereign.'" *Id.* (quoting *Lane*, 518 U.S. at 192).

As an additional ground for dismissal, the Fourth Circuit, referring to 29 C.F.R. § 1614.504(a), noted "that the government has specifically limited by regulation the forms of relief a plaintiff may seek when she alleges breach of a Title VII settlement agreement by a government agency." *Frahm*, 492 F.3d at 262. The Court emphasized that the regulation expressly "permits an employee who claims a breach of a Title VII settlement agreement to elect between only two options." *Id.* at 263. They are specific enforcement of the agreement or reinstatement of the original discrimination claim. *Id.* at 262–63. But, Frahm did not pursue either option. *Id.* at 263. And, the Court rejected the plaintiff's claim for additional remedies. *Id.*; *see also Taylor v. Geithner,* 703 F.3d 328, 335 (6th Cir. 2013) ("Section 1614.504 allows a complainant either to seek injunctive relief, i.e., specific performance of the settlement agreement, within the agency structure or to request what is essentially an unraveling of the settlement agreement so that the complainant can pursue the underlying discrimination claims, which can be reviewed in federal court."); *Munoz v. Mabus,* 630 F.3d 856, 862 (9th Cir. 2010) ("Had [plaintiff] chosen to reinstate his underlying discrimination complaint instead of seeking specific performance, his claim could eventually have been heard in federal court after exhausting administrative procedures . . . .").

Here, unlike the plaintiff in *Frahm*, Route pursued one of the two remedies available under 29 C.F.R. § 1614.504(a) — she filed a complaint with the EEOSC for breach of contract, asking the Agency to pay her $30,000. *See* ECF 1, ¶ 22; ECF 15-1. [20] But, as discussed, the complaint

---

[20] Plaintiff never pursued the alternative remedy: reinstatement of her underlying discrimination claim. *See* ECF 1. Defendant argues in its Reply that this is an additional ground upon which the Court should dismiss plaintiff's discrimination claim. ECF 28 at 5–7. But, because defendant raised the argument in the Reply, plaintiff did not have an opportunity to respond. Therefore, I decline to dismiss on this basis. *See Clawson v. FedEx Ground Package Sys., In*c.,

was untimely.  However, even assuming that Route filed a timely complaint with the EEOSC for breach of contract, this Court lacks jurisdiction to consider the claim of breach, because the United States has not waived sovereign immunity with respect to a damages claim against the government for breach of a settlement agreement resolving a Title VII dispute.

Specifically, plaintiff requests a "judgment against the Defendant individually in an amount to be determined at trial;" that defendant "pay the amount owed to Plaintiff Route in the Settlement Agreement . . ."; recovery of "all equitable monetary damages available under the law, including but not limited to back pay and front pay . . ."; "reasonable attorneys' fees, expert fees and costs;" and "pre-judgment and post-judgment interest as provided by law".  ECF 1 at 8–9. But, *Frahm* makes clear that such claims are barred by sovereign immunity.

Other courts examining the issue have reached the conclusion that defendant advances here: The government has not waived its sovereign immunity for monetary claims of breach of a settlement agreement.  *See Taylor,* 703 F.3d at 335 (dismissing case for lack of subject matter jurisdiction because "[n]othing in 42 U.S.C. § 2000e–16(c) indicates that it is intended to waive sovereign immunity for claims other than discrimination", nor does the EEOC regulation waive the government's sovereign immunity for Title VII claims alleging the government's breach of settlement agreement); *Munoz,* 630 F.3d at 862 (because a waiver of sovereign immunity must be unequivocally expressed, the regulation's "silence counsels against a finding of jurisdiction" over breach of settlement agreement claims); *Thompson v. McHugh,* 388 Fed. Appx. 870 (11th Cir. 2010) (concluding that the court lacked subject matter jurisdiction because although Title VII waived sovereign immunity for discrimination claims, a claim for settlement rescission was based

---

451 F. Supp. 2d 731, 734 (D. Md. 2006) (citing *United States v. Williams*, 445 F.3d 724, 736 n.6 (4th Cir. 2006)).

on contract law, and 29 CFR § 1614.504 only discusses administrative remedies); *Lindstrom v. United States,* 510 F.3d 1191 (10th Cir. 2007) (rejecting plaintiff's argument that the statutory scheme created by Congress to govern the EEOC confers jurisdiction for federal courts to enforce settlement agreements); *Bock v. Kennedy*, MJM-25-1323, 2026 WL 863890, at *7 (D. Md. Mar. 30, 2026) ("Plaintiff has not identified an unequivocal waiver of sovereign immunity permitting her claims, so the relief she seeks is unavailable in this forum. Plaintiff's breach-of-contract claims must be dismissed for lack of subject matter jurisdiction."); *Sutton v. Vilsack*, DCN-12-1386, 2014 WL 4199163, at *3 (D.S.C. Aug. 20, 2014) ("To the extent the complaint does advance a claim for breach of the settlement agreement . . . Title VII does not provide a cause of action against the government for such a cause of action.").

Route also seeks nonmonetary relief in the form of an order declaring that defendant breached the Settlement Agreement; reinstatement of her discrimination complaint that led to the Settlement Agreement; "a permanent injunction prohibiting defendant from terminating plaintiff's employment and engaging in any discriminatory termination and retaliation"; and an order that defendant "refrain from any retaliation against Plaintiff or any other person, for participating in or supporting this case in any manner". ECF 1 at 8–9.[21]

Courts in this circuit have extended the holding in *Frahm* to nonmonetary claims for breach of a Title VII settlement agreement. For example, in *Bock*, 2026 WL 863890, at *7, the court said: "To the extent Plaintiff seeks nonmonetary relief, *Frahm* makes clear that 29 C.F.R. § 1614.504

---

[21] In its Motion, defendant claims that plaintiff also seeks an "official apology" and monetary compensation of roughly $120,000,000. ECF 15-1 at 7 n.4 (citing ECF 1 at 12-15, 17-18; ECF 26 at 5). But, it is unclear where in the record defendant found these requests. Defendant cites to the Complaint. ECF 15-1 at 7 n.4; *see* ECF 1. But, no such language is found there. Defendant also cites to ECF 26. *See* ECF 15-1 at 7 n.4. But, ECF 26 is a proposed order provided by plaintiff regarding defendant's deadline to Reply to her Opposition.

provides the exclusive mechanism for such relief—either specific implementation of the agreement or reinstatement of the underlying discrimination claim." *See also Webster v. Mattis*, TSE-17-01384, 2018 WL 1082848, at *4 (E.D. Va. Feb. 15, 2018), *report and recommendation adopted*, 2018 WL 1071475 (E.D. Va. Feb. 27, 2018), *aff'd*, 731 F. App'x 214 (4th Cir. 2018), *cert. denied*, 586 U.S. 1150 (2019); *Kaplan v. James*, 25 F. Supp. 3d 835, 840 (E.D. Va. 2014); *Berry*, 587 F. Supp. 2d at 728.

To be sure, the facts alleged by plaintiff are quite unfortunate. What happened here is akin to the modern-day version of theft from a mailbox. Plaintiff assigns blame to defendant for failure to verify the legitimacy of the rogue payment request, which seemed legitimate because it appeared to come from the office of plaintiff's lawyer and was part of a legitimate email chain.

Even assuming that defendant had a duty to verify the validity of the payment request, the record reflects diligence on defendant's part. For example, on November 29, 2022, immediately upon receipt of the updated ACH form with a Truist Bank account, defendant followed up with Branch, asking whether the ACH forms for both plaintiff and Branch had been "updated or just one". ECF 15-4 at 102. Unfortunately, it was the fraudster who responded, and resubmitted the Truist Bank ACH form to defendant, again from Branch's email account. *Id.* at 108.

Moreover, Downing timely responded to the inquiries of Branch and his client. For example, Branch wrote to Downing on December 2, 2022, and December 8, 2022, asking her to confirm that the Agency had all the documentation needed to process the settlement payments. *Id.* at 114–115. Downing replied to Branch on December 8, 2022, informing him that she "checked with the team processing the payment," that they were "not able to provide a specific estimate," and that they would update Downing once the payment had been processed. *Id*. at 116. When Branch followed up on December 14, 2022, *id.* at 125, Downing responded the following day and

assured him that the settlement payment would be completed before the deadline of January 25, 2023. *Id.* at 126. Further, after the payment was delivered to the fraudulent bank account, defendant provided tracing information to Branch and Route (*id.* at 140), provided Branch with a detailed chronology of their communications (*id.* at 245–253), attempted to recall the funds (*id.* at 192), and filed a complaint with the OIG. *See* ECF 15-5.

On February 3, 2023, plaintiff contacted Downing to "verify when [she] should receive the settlement payment." ECF 15-4 at 162. On February 8, 2023, Downing wrote to Branch informing him that payment had been issued to Route on December 28, 2022, "to the account ending in 3004." *Id.* at 132. That was not the correct account, according to plaintiff. On February 21, 2023, Branch emailed Downing to advise her that Route had not received the settlement payment. *Id.* at 166. Then, on February 23, 2023, Downing provided the tracing information to Branch. *Id.* at 140. Significantly, she also advised Branch that the payment to Route had been issued on December 28, 2022, "to the account she provided on the ACH form." *Id.* It is not clear what action Branch took at that time. Yet, on March 17, 2023, Route emailed Downing, writing, in part: "I have attempted to be more than patient with regard to the settlement payment. I have not received the deposit. I am respectfully requesting an update as soon as possible." *Id.* at 142.

Significantly, it was not until January 14, 2024, nearly one year after Downing first informed Branch that payment had been issued to plaintiff on December 28, 2022, to an account ending in 3004, that plaintiff belatedly filed a formal complaint with the EEOSC. ECF 15-4 at 132, 202. She alleged only breach of the Settlement Agreement; she did not seek reinstatement of her Title VII claim. ECF 15-4 at 202.

As indicated, under 29 C.F.R. § 1614.504(a), a plaintiff must notify the EEO Director of noncompliance with a settlement agreement within 30 days of when the complainant knows or

should know of the noncompliance. Plaintiff clearly was told twice in February 2023 that payment was issued on December 28, 2022, to an account that differed from hers. Yet, she did not take any steps to file a complaint within 30 days. Plaintiff also could have asked the Agency to reopen her underlying discrimination claim. Instead, when she filed her complaint in January 2024, she pursued only a breach claim.

Unless plaintiff is able to pursue her claim that HHS breached the Settlement Agreement, the waiver clause in the Settlement Agreement remains intact. As noted, it provides, ECF 15-3, ¶ 4:

> Complainant agrees to waive, release, and forever discharge the Agency, its officers, agents, assigns, employees, and representatives (in their official and/or personal capacities) from any claims, demands, or causes of action, which Complainant has or may have, arising from her EEO complaint and/or from her employment with the Agency. This release includes, but is not limited to, a release of any right to administrative, judicial, or any other type of relief, or of any claim to back pay, attorney's fees and costs, or other type of compensation. However, by entering into this Agreement, Complainant does not waive rights or claims that may accrue after the effective date of this Agreement.

To be sure, plaintiff disputes the viability of the Settlement Agreement, maintaining that defendant's breach renders it void. But, plaintiff has not identified any statute where the government has unequivocally waived sovereign immunity for such a claim. Reliance on Title VII, which "says nothing about challenges to the validity of settlement agreements between federal departments and their employees", does not suffice to confer subject matter jurisdiction. *Thompson*, 388 F. App'x at 873. Therefore, I agree with defendant that this Court lacks jurisdiction to address plaintiff's breach of contract claim.

Moreover, because of the waiver provision in the Settlement Agreement, plaintiff's breach claim can proceed only if the Settlement Agreement is found invalid. Moreover, the discrimination claim cannot be revived without a finding that HHS breached the Settlement Agreement. Even

then, plaintiff did not timely file a complaint to allege a breach of the Settlement Agreement or to reinstate her Title VII claim. *See* 29 C.F.R. § 1614.504(a). And, "[t]he jurisdictional bar applies to both claims for breach of a settlement agreement and any claims that rely on the existence of a breach." *Schmidt v. Shah*, 696 F. Supp. 2d 44, 60–61 (D.D.C. 2010) (citation omitted); *see Sunday Street v. Wormuth*, MJM-23-3231, 2025 WL 958592, at *4 (D. Md. March 31, 2025) (dismissing plaintiff's claims for sex-based harassment and retaliation under Title VII because "they are based on Title VII violations that preceded execution of the Settlement Agreement."). Therefore, "[a]bsent invalidation of the Settlement Agreement, Plaintiff is barred from pursuing these claims . . . ." *Id.*; *see Bala v. Com. of Virginia Dep't of Conservation & Recreation*, 614 F. App'x 636, 640 (4th Cir. 2015) (noting that a plaintiff in a Title VII case "cannot obtain through litigation what he voluntarily relinquished in the Settlement Agreement for good consideration"); *Keith v. Aldridge*, 900 F.2d 736, 741-42 (4th Cir. 1990) (affirming dismissal, on res judicata grounds, of a plaintiff's Title VII, due process, and Privacy Act claims, when the plaintiff and the Air Force entered into a valid settlement agreement that precluded future causes of action arising from plaintiff's termination from the Air Force).

In short, this Court lacks the power to make a determination as to the validity of the Settlement Agreement. Because the Court lacks subject matter jurisdiction as to the breach of contract claim, that claim must be dismissed, without prejudice.[22] And, plaintiff's discrimination

---

[22]A dismissal for lack of subject matter jurisdiction must be without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits. *See* Fed. R. Civ. P. 41(b); *Semtek Int'l Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 505 (2001); *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 93–94 (1998); *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013); *Interstate Petroleum Corp. v. Morgan,* 249 F.3d 215, 222 (4th Cir. 2001) (en banc); *see also Brereton v. Bountiful City Corp.,* 434 F.3d 1213, 1218 (10th Cir. 2006) ("[D]ismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is *incapable* of reaching a disposition on the merits of the underlying

claim must also be dismissed, without prejudice, because the waiver provision of the Settlement Agreement bars pursuit of that claim.

**B.**

**1.**

Route brings a skeletal claim for sex discrimination, pursuant to Title VII. *See* ECF 1. She seeks to pursue a sex discrimination claim against defendant for the very same conduct that the parties resolved through the Settlement Agreement.

Even assuming, *arguendo*, that sovereign immunity does not bar plaintiff's underlying sex discrimination claim, defendant contends that the claim is subject to dismissal, pursuant to Rule 12(b)(6), because plaintiff fails to state a claim. HHS maintains that plaintiff's allegations with respect to sex discrimination are threadbare and conclusory. ECF 15-1 at 9. Moreover, according to defendant, "Plaintiff has failed to provide any information regarding the applicable law or how the Defendant has violated it." *Id.*

Route asserts that "the complaint, read together with the incorporated exhibits and the detailed report of investigation, sets forth ample factual allegations to state a plausible claim for relief." ECF 19 at 12. She maintains that the rescission of her employment offer by defendant occurred after "Defendant's officials became aware of her pregnancy and her disability status, and that the position was ultimately filled by a less qualified white male comparator." *Id.* According to plaintiff, these allegations "are concrete factual statements that, if proven, allow the court to reasonably infer that Plaintiff suffered discrimination on the basis of sex, pregnancy, race, color,

---

claims."); *Frederiksen v. City of Lockport,* 384 F.3d 437, 438 (7th Cir. 2004) ("A suit dismissed for lack of jurisdiction cannot *also* be dismissed 'with prejudice'; that's a disposition on the merits, which only a court with jurisdiction may render . . . . 'No jurisdiction' and 'with prejudice' are mutually exclusive." (internal citation omitted)).

and disability." *Id.* Moreover, with respect to exhaustion, plaintiff contends that she has "timely exhausted her administrative remedies by filing an EEO complaint in January 2022 and pursuing it through investigation and hearing orders." ECF 19 at 1.

In the Reply, HHS contends that "because Plaintiff's EEO complaint was dismissed based on the 2022 Agreement, there was never any final agency action regarding Plaintiff's underlying Title VII claims." ECF 28 at 4 (internal citation omitted). Therefore, according to defendant, plaintiff has not administratively exhausted her claim, rendering it subject to dismissal under Rule 12(b)(6). *Id.* As discussed, to assert a Title VII claim in federal court, a plaintiff must first exhaust her administrative remedies. *Berry,* 587 F. Supp. 2d at 726.

"Exhaustion of administrative remedies is an affirmative defense most properly considered on a motion for summary judgment." *Carmichael v. Buss,* TDC-14-3037, 2017 WL 2537225, at *3 (D. Md. June 9, 2017) (citing *Jones v. Bock*, 549 U.S. 199, 211–12 (2007)). Because I shall construe defendant's Motion as a motion to dismiss, and because most of defendant's argument with respect to exhaustion was raised in the Reply, I decline to consider the issue.[23]

**2.**

Title VII makes it unlawful for an employer "to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also prohibits retaliation against employees for opposing discrimination or

---

[23] Summary judgment is also inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours*, 637 F.3d at 448-49. The Fourth Circuit has said: "In general, summary judgment should only be granted 'after adequate time for discovery.'" *McCray*, 741 F.3d at 483 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In *McCray*, the Fourth Circuit determined, *inter alia,* that the district court abused its discretion in dismissing an action before the plaintiff had an opportunity to conduct discovery in connection with a summary judgment motion under Fed. R. Civ. P. 56. *Id.* at 483. The *McCray* Court said, *id.*: "Summary judgment before discovery forces the non-moving party into a fencing match without a sword or mask."

participating in an investigation, proceeding, or hearing under the Act. 42 U.S.C. § 2000e-3(a); *see Cosby v. S.C. Prob., Parole & Pardon Servs.*, 93 F.4th 707, 718 (4th Cir. 2024); *McIver v. Bridgestone Americas, Inc.*, 42 F.4th 398, 410–11 (4th Cir. 2022); *Laurent-Workman v. Wormuth*, 54 F.4th 201, 212 (4th Cir. 2022); *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019).

To state a Title VII discrimination claim, a plaintiff must "allege facts to satisfy the elements of a cause of action created by [Title VII]." *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015). That is, Route must allege sufficient facts from which the Court can draw a reasonable inference that the Agency "discriminate[d] against [her] . . . because of [her] . . . sex." 42 U.S.C. § 2000e–2(a)(1). "[A]n absolute precondition" to any employment discrimination suit is "the existence of some adverse employment action." *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985).

To state a claim for Title VII retaliation, "[a] plaintiff must show (1) that she engaged in a protected activity, (2) that her employer took an adverse action against her, and (3) that there was a causal link between the two events." *Laurent-Workman*, 54 F.4th at 212 (citing *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016)).

However, "[a]n employment discrimination plaintiff need not plead a prima facie case of discrimination" at the motion to dismiss stage. *Bing*, 959 F.3d at 616 (quoting *Swierkiewicz*, 534 U.S. at 515). Still, "to survive a motion to dismiss, the employment discrimination complaint must 'state[ ] a plausible claim for relief' that 'permit[s] the court to infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense.'" *Coleman v. Maryland Ct. of Appeals,* 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Iqbal,* 556 U.S. at 679) (alterations in *Coleman*), *aff'd*, 566 U.S. 30 (2012). The pertinent question at the motion to dismiss stage is

51

whether the plaintiff alleges facts that plausibly state a violation of Title VII "above a speculative level." *Bing*, 959 F.3d at 617 (quoting *Coleman*, 626 F.3d at 190).

Contrary to plaintiff's assertion in her Opposition, she does not "allege a coherent and detailed narrative showing that her job offer was rescinded because of her protected characteristics." ECF 19 at 13. Indeed, the Complaint alleges no facts to suggest a plausible connection between Route's pregnancy (or any other protected characteristics) and the Agency's revocation of her employment offer.

Route references her pregnancy in the Complaint. She alleges that the Agency "was aware of Ms. Route's pregnancy at the time [of her job offer] and approved her request to take unpaid leave for six weeks after childbirth." ECF 1, ¶ 6. Further, she asserts: "Notice of the rescission [of her job offer from SAMHSA] shocked Ms. Route and caused an anxiety attack and great emotional distress, placing the life of her unborn child in jeopardy as she was already in a HighRisk pregnancy." *Id.* ¶ 10. Route also alleges that she filed a complaint with DCDBH related to its refusal to accept her request to rescind her resignation, and in that complaint, "[s]he specifically noted that she was thirty-one weeks pregnant and that DCDBH was discriminating against her in deciding to refuse Ms. Route's rescission which violated the District's Personnel Manual." *Id.* ¶ 12.

But, plaintiff's Complaint fails to allege any facts to allow the Court to draw a reasonable inference that the Agency rescinded plaintiff's employment offer *because* of her pregnancy or her sex. Route points the Court to the extensive administrative record that defendant included with its Motion. ECF 19 at 13. But, a review of the record, in particular the Agency's Report, does not aid plaintiff. Indeed, one of the few references to Route's pregnancy outside of plaintiff's own assertions and beliefs is that several employees of the Agency "learned that Complainant was

52

pregnant from Complainant's then supervisor", Bazron.  ECF 15-2 at 6.  The Report reveals that a potential reason for "the decision to reassess the hir[ing of Route] arose due to the concern that [the Agency's] staff would be supervised by someone who was responsible for the grant in DC that had been placed on corrective action by [the Agency]– and Anna DeJong more specifically." *Id.* at 10.

Simply put, the record on which plaintiff urges the Court to rely does not establish a plausible claim of gender discrimination.

### IV. Conclusion

For the foregoing reasons, I shall grant the Motion and dismiss plaintiff's claims for breach of contract and sex discrimination, without prejudice.

An Order follows, consistent with this Memorandum Opinion.

Date: May 5, 2026                                    /s/
                                         Ellen L. Hollander
                                         United States District Judge

53